UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARANDA JOHNSON,

    Plaintiff,                              Case No. 14-cv-14713

v.                                       HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER OVERRULING OBJECTIONS** (document no. 13), **ADOPTING REPORT AND RECOMMENDATION** (document no. 12), **DENYING JOHNSON'S MOTION FOR SUMMARY JUDGMENT** (document no. 10), **GRANTING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (document no. 11), **AND DISMISSING CASE**

The Social Security Administration ("SSA") denied the application of Maranda Johnson ("Johnson") for supplemental security income ("SSI") in a decision issued by an Administrative Law Judge ("ALJ"). *See* Administrative Record ("A.R.") 14, ECF No. 6-2. After the SSA Appeals Council declined to review the ruling, Johnson appealed. The Court referred the matter to Magistrate Judge Patricia T. Morris, and the parties filed cross-motions for summary judgment. *See* Mots. Summ J., ECF Nos. 10, 11. The magistrate judge issued a Report and Recommendation ("Report") suggesting the Court deny Johnson's motion and grant the Commissioner's motion. Report, ECF No. 12. Johnson filed timely objections to the Report. Obj., ECF No. 13.

After examining the record and considering Johnson's objections de novo, the Court concludes that her arguments do not have merit. Accordingly, the Court will adopt the Report's findings, deny Johnson's motion for summary judgment, grant the Commissioner's motion for summary judgment, and dismiss the complaint.

### BACKGROUND

The Report properly details the events giving rise to Johnson's action against the Commissioner. Report 5–15, ECF No. 12. The Court will adopt that portion of the Report.

### STANDARD OF REVIEW

Civil Rule 72(b) governs the review of a magistrate judge's report. A District Court's standard of review depends upon whether a party files objections. The Court need not undertake any review of portions of a Report to which no party has objected. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). De novo review is required, however, if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). In conducting a de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When reviewing a case under 42 U.S.C. § 405(g), the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (quotations omitted). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance" such that a "reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotations omitted). An ALJ may consider the entire body of evidence without directly addressing each piece in his decision. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). "Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he

implicitly resolved such conflicts." *Id.*

## DISCUSSION

Johnson objected to three parts of the Report: (1) the consideration of Johnson's credibility in light of medical evidence showing disability; (2) the finding that the ALJ's decision was supported by substantial evidence; and (3) the reliance on the ALJ's credibility analysis. Because Johnson's first and third objections center on the ALJ's assessment of Johnson's credibility, the Court will evaluate them together.

First, Johnson argues that the ALJ incorrectly found her not credible because her complaints of pain were inconsistent with medical evidence. Obj. 1–3, 5–6, ECF No. 15. When considering the claimant's complaints of pain, "an ALJ may properly consider the credibility of the claimant. Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citations omitted).

Citing discrepancies between the medical evidence offered and Johnson's testimony at the administrative hearing, including the "intensity, persistence and limiting effects of [Johnson's] symptoms" and Johnson's recollection of the frequency and severity of her seizures, the ALJ concluded that Johnson's descriptions were "inconsistent and unpersuasive." A.R. 23, 28, ECF No. 6-2. Regarding the limiting effects of Johnson's symptoms, the ALJ found that Johnson's daily activities—including the physically and emotionally demanding work of taking care of her three young children—are not limited "to the extent one would expect given the complaints of disabling symptoms and limitations." *Id.* at 27. Even if Johnson's recollection of her limitations was accurate, she stated that she

did not take her prescribed medication regularly. The ALJ rightly concluded that "[s]uch discrepancies diminish the persuasiveness of [Johnson's] subjective complaints and alleged functional limitations." *Id.* at 28.

Regarding her seizures, Johnson first testified that she was experiencing 8 to 9 seizures a year, later testified that she was experiencing 8 to 9 seizures a month, and eventually stated that she had 8 to 9 "episodes in a current month, otherwise she had 2 to 3 seizures a month." *Id.* At a July 2012 medical exam, however, she reported that her last seizure was in 2011. *Id.* She testified that she received treatment and medication for these seizures but could not remember the names or addresses of the treating physicians, much less provide documentation of that treatment. *Id.* at 27. The ALJ correctly found that Johnson's testimony about her seizures was inconsistent.

Second, Johnson asserts that the ALJ "misconstrued medical evidence and testimony that ultimately, resulted in an inadequate [residual functional capacity ("RFC")] to address Plaintiff's multiple severe medical conditions (specifically, "seizures, left plantar fasciitis, obesity and depression)." Obj. 3–4, ECF No. 15. The ALJ found that Johnson has the RFC to perform light unskilled work; can engage in "occasional postural activities but no climbing of ladders, ropes, and scaffoldin[g]"; cannot be required to "engage in bilateral foot controls"; and should avoid hazards of unprotected heights, moving dangerous machinery, commercial driving, and "concentrated exposure to extreme temperatures and pulmonary irritants." A.R. 21, ECF No. 6-2.

The ALJ considered the following medical and opinion evidence: (1) a 2008 mental status exam by Dr. Nick Boneff who diagnosed Johnson with a cognitive disorder secondary to seizures and traumatic brain injury; (2) a 2008 consultative exam with Dr.

Cynthia Shelby-Lane who concluded that Johnson could lift 20 pounds occasionally and stand or walk 6 hours in an 8-hour day; (3) a 2011 consultative exam by Dr. Kenneth McCoy who diagnosed Johnson with major depressive disorder, but said that Johnson's performance "was an under-estimation of her true abilities"; (4) a 2012 consultative evaluation with Dr. Shelby-Lane who opined that Johnson would benefit from a weight-reduction program, lifestyle changes, and ongoing mental health care; (5) a 2012 consultative exam with Dr. Atul Shah who diagnosed Johnson with major depressive disorder, recurrent with psychotic features in partial remission, and chronic panic disorder; (6) a 2012 opinion from state agency medical consultant Dr. Tariq Mahmood, who said that Johnson "could perform work at light exertional level[s]," and "could engage in other postural activities without limitations"; and (7) an opinion from state agency consultant Dr. Zahra Yousuf, who said that Johnson "did not have memory and understanding limitations," and Johnson "retained mental capacity to meet the basic demands for simple, unskilled work." *Id.* at 23–28.

An ALJ must give "good reasons" for the weight accorded to a treating source. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). If a source is not given controlling weight, an ALJ must determine what weight to give it in light of the length, frequency of examination, nature, and extent of the treatment relationship; supportability of the opinion and its consistency with the record as a whole; and the specialization of the treating source. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ assigned (1) no weight to Dr. Boneff's exam because it was issued four years before Johnson's alleged onset date, and the findings were inconsistent with Johnson's daily activities and other medical evidence; (2) limited weight to Dr. Shelby-

5

Lane's 2008 evaluation because it was issued four years before Johnson's alleged onset date; (3) limited weight to Dr. McCoy's evaluation because it was issued prior to Johnson's alleged onset date, and Johnson's performance was an under-estimation of her abilities; (4) great weight to Dr. Shelby-Lane's 2012 evaluation because "her findings and opinion are consistent with the medical evidence of the record and subjective testimony of the claimant"; (5) limited weight to Dr. Shah's evaluation because it was inconsistent with other medical evidence and he relied heavily on, and uncritically accepted as true, most of Johnson's subjective report of symptoms; and (6–7) great weight to the opinions of Drs. Mahmood and Yousuf because of their expertise in the Social Security disability programs, specifically the evaluation of the medical issues in disability claims. *Id.* at 25–27.

The ALJ concluded that an RFC of "light work" is supported by the medical findings and Johnson's testimony, including admitted daily activities "that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." *Id.* at 27. The ALJ also concluded that Johnson's impairments are "well controlled to the extent that she complies with advised treatment," and the medical evidence and other factors do not support Johnson's credibility "to the extent that greater limitations should be incorporated in the residual functional capacity." *Id.* The Court agrees. The fact that Johnson's admitted daily activities include the demanding work of raising three young children supports the ALJ's RFC determination that she is capable of light, unskilled work. The ALJ gave "good reasons" when according various weight to the medical evidence regarding Johnson's condition, including giving little or no weight to evaluations conducted before Johnson's alleged onset date. And the ALJ properly granted greater weight to the opinions of the state agency consultants given their expertise. Accordingly, the Court finds

that the ALJ's decision was supported by substantial evidence.

## CONCLUSION

The Court has carefully reviewed the parties' motions, the Report, and Johnson's objections. The Court finds Johnson's objections unconvincing, and agrees with the Report's recommendation to grant the Commissioner's motion for summary judgment and deny Johnson's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the magistrate judge's Report and Recommendation (document no. 12) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Johnson's Motion for Summary Judgment (document no. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment (document no. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 15, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 15, 2015, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager